UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMEEL DAVIS,

                                Plaintiff,

        v.

WESTCHESTER COUNTY FAMILY
COURT; MAGISTRATE ROSA
CABANILLAS, in her official capacity;
MAGISTRATE ROSA CABANILLAS, in
her individual capacity; WESTCHESTER
COUNTY,

                                Defendants.

No. 16-CV-9487 (KMK)

OPINION & ORDER

Appearances:

Jameel Davis
New York, NY
*Pro Se Plaintiff*

Michael A. Berg, Esq.
Office of the Attorney General, New York State
New York, NY
*Counsel for Defendants Westchester County Family Court and Magistrate Rosa Cabanillas*

Sean T. Carey, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Westchester County*

KENNETH M. KARAS, District Judge:

        Plaintiff Jameel Davis, proceeding pro se, brought this Action against Defendants

Westchester County Family Court, Magistrate Rosa Cabanillas (together, "State Defendants"),

and Westchester County, challenging a judgment against him in state court ordering him to pay

certain amounts of allegedly past-due child support payments.  (*See* Compl. (Dkt. No. 1).)

Before the Court are Defendants' Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Dkt. Nos. 24, 53.) For the reasons to follow, the Motions are granted.

## I. Background

### A. Factual Background

The following facts are taken from the Complaint and are assumed true for purposes of the Motions.

On September 12, 2011, Plaintiff was deceived into signing an Acknowledgement of Paternity at Phelps Memorial Hospital in Sleepy Hollow, New York. (*See* Compl. ¶ 25.) Plaintiff believed that he was signing the birth certificate of a baby boy born to a woman with whom he had had a relationship, (*see id.* ¶ 26), but he learned several years later that the document was in fact an Acknowledgement of Paternity, (*see id.* ¶ 27). Plaintiff later also learned that the Acknowledgement of Paternity designated him as a non-custodial parent and obliged him to make payments and endure "regular billings, delinquency notices, liens on property, seizure and sale of property, garnishment of wages, federal imprisonment, [and] fines." (*Id.* ¶ 29.) In Plaintiff's view, the Acknowledgement of Paternity is "an adhesion document that violates the fabric and fiber of the United States Constitution, New York Bill of Rights, and freedom and liberty." (*Id.* ¶ 30.) Plaintiff denies that he is a non-custodial parent or any other title that would oblige him to make child support payments. (*See id.* ¶ 33.)

On October 3, 2013, Plaintiff attended an expedited proceeding in Westchester County Family Court before Magistrate Christine Patneaude Krahulik. (*See id.* ¶ 34.)[1] As a result of that

---

[1] Although Plaintiff alleges that the proceeding took place on October 13, 2013, (*see* Compl. ¶ 34), the stipulation to which Plaintiff refers was issued on October 3, 2013, (*see* Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss Ex. B (Dkt. No. 25)). Because a court

hearing, Plaintiff entered into a voluntary stipulation requiring him to pay child support, plus 60 percent of unreimbursed healthcare and childcare expenses. (*See* Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss ("Berg Decl.") Ex. B (Dkt. No. 25); *see also* Compl. ¶ 40.) Plaintiff alleges that he "did not understand the nature of the proceeding," (Compl. ¶ 37), and that Magistrate Krahulik was "attempting to coerce [him] into entering a contract," (*id.* ¶ 36). There is no indication or allegation that Magistrate Rosa Cabanillas Thompson, a Defendant named in this lawsuit, presided over or was otherwise involved in the October 3 proceeding.[2]

On April 19, 2016, Plaintiff attended an "expedited administrative hearing" in Westchester County Family Court presided over by Magistrate Thompson. (*See id.* ¶¶ 90–91.) At the hearing, Plaintiff was arrested by a court officer after being told by the officer multiple times to "shut up" and to not "say one more word," (*id.* ¶ 92), despite the fact that "Plaintiff was not offensive, aggressive[,] or unlawful in anyway [sic]," (*id.* ¶ 93). Plaintiff was charged with contempt of court, and the charge was subsequently dismissed after "five special appearance hearings." (*Id.* ¶¶ 94, 96.)

On June 16, 2016, at another proceeding in Westchester County Family Court, Magistrate Thompson entered a money judgment against Plaintiff in the amount of $5,848 in past due child support payments, as well as $25 in costs. (*See* Berg Decl. Ex. C; *see also* Compl. ¶ 112.) The money judgment resulted in the filing of a lien against Plaintiff in the Westchester County Clerk's Office. (*See* Compl. ¶ 122.) On October 19, 2016, Plaintiff filed what he calls a "certified demand for proof of jurisdiction," but has never received any such proof. (*See id.*)

---

"may . . . take judicial notice of the orders of another court," *Harasz v. Katz*, 239 F. Supp. 3d 461, 474 (D. Conn. 2017), the Court will adopt the date in the stipulation.

[2] Although Plaintiff sued "Magistrate Rosa Cabanillas," (*see* Compl.), Defendants have advised that her full name and title is, in fact, Magistrate Rosa Cabanillas Thompson, (*see* Mem. of Law in Supp. of State Defs.' Mot. to Dismiss 1 (Dkt. No. 26)).

Throughout the Complaint, Plaintiff refers to the "title IV-D" or the "IV-D" program. (*See, e.g.*, Compl. ¶¶ 74, 85.) To the best of the Court's and Defendants' understanding, Plaintiff is referencing Title IV-D of the Social Security Act, which authorizes federal appropriations "for the purpose of enforcing the support obligations owed by noncustodial parents to their children." 42 U.S.C. § 651. In New York, the Department of Social Services is "designated as the single state agency to supervise the administration of the state's child support program," N.Y. Soc. Serv. Law § 111-a(1), and is authorized "to distribute to local districts the full amount of federal incentive payments received under title IV-D of the federal social security act," *id.* § 111-f.

Plaintiff seeks damages for what he alleges were various violations of his constitutional rights. Specifically, Plaintiff brings the following claims: (1) 42 U.S.C. § 1983 claim for violation of his constitutional rights; (2) 42 U.S.C. § 1985 claim for conspiracy to violate his constitutional rights; (3) 42 U.S.C. § 1986 claim for neglect or failure to prevent violation of his constitutional rights; (4) undue influence; (5) civil conspiracy; (6) abuse of process; (7) breach of fiduciary duty; (8) constructive fraud; (9) fraud in the inducement; (10) duress; (11) infliction of emotional distress; and (12) "Promissory Note—House Joint Resolution 192-Promissory Note Dishonor." (*See* Compl. ¶¶ 123–64.) Under each of the first 11 counts, Plaintiff provides only the following details:

> Defendants violated [P]laintiff's rights under the 1st, 4th, 5th, 6th, 7th, 9th, 10th, 13th, and 14th Amendments of the U.S. Constitution, paragraphs 1, 3, 4 and 5 of the New York Bill of Rights and due process of law.
>
> The intent of all defendants committing these torts are [sic] the federal incentive program illustrated in 42 U.S.C. § 658(a)—Incentive Payments to States, 5 CFR § 304.21 Federal Financial Participation, and 45 CFR § 302.34 Cooperative Arrangements with courts and law enforcement.

(*See, e.g.*, Compl. ¶¶ 124–25.)

Plaintiff filed his Complaint on December 8, 2016 in Manhattan, naming as Defendants Westchester County Family Court, Westchester County Child Support Enforcement, and Magistrate Rosa Cabanillas.  (*See* Dkt. No. 1.)  The Action was thereafter transferred to the White Plains Division of the Southern District of New York.  (*See* Dkt. No. 2.)  On January 10, 2017, State Defendants filed a letter seeking leave to file a Motion To Dismiss.  (*See* Dkt. No. 13.)  During this time, Plaintiff filed a number of requests for miscellaneous relief.  (*See, e.g.*, Dkt. Nos. 9, 12, 14–16, 21.)  On January 12, 2017, the Court entered a briefing schedule for State Defendants' Motion.  (*See* Dkt. No. 18.)  On February 6, 2017, the Court issued an Order denying Plaintiff's various requests for relief and directing the Clerk of Court to substitute Westchester County in place of Westchester County Child Support Enforcement.  (*See* Dkt. No. 22.)

On February 8, 2017, State Defendants filed their Motion To Dismiss and accompanying papers.  (*See* Dkt. Nos. 24–26.)  Plaintiff filed his opposition on February 24, 2017, (*see* Dkt. No. 33), and State Defendants replied on March 2, 2017, (*see* Dkt. No. 37).  Plaintiff continued to file miscellaneous motions, (*see* Dkt Nos. 28, 31, 34–36, 40), which were again denied, (*see* Dkt. No. 43).  On June 2, 2017, service of the summons and Complaint was effected on Westchester County.  (*See* Dkt. No. 50.)  Westchester County filed a letter shortly thereafter asking for leave to file its own Motion To Dismiss.  (*See* Dkt. No. 48.)  The Court granted that application and set a briefing schedule.  (*See* Dkt. No. 49.)

On June 29, 2017, Westchester County filed its Motion To Dismiss and accompanying papers.  (*See* Dkt. Nos. 53–56.)  Plaintiff opposed the Motion on July 12, 2017, (*see* Dkt. No. 58), and Westchester County filed its reply papers on July 21, 2017, (*see* Dkt. No. 59).

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)).  This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

<u>1. Rule 12(b)(1)</u>

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

2. Rule 12(b)(6)

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, the "purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks omitted). To decide the motion, the Court "may consider facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and

any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

Defendants argue primarily that the Court lacks jurisdiction to adjudicate Plaintiff's claim and invoke a number of doctrines in support of that argument.  (*See* Mem. of Law in Supp. of State Defs.' Mot. To Dismiss ("State Defs.' Mem.") 6–12 (Dkt. No. 26); Mem. of Law in Supp. of County Def.'s Mot. To Dismiss ("County Def.'s Mem.") 10–12 (Dkt. No. 55).)  Because subject matter jurisdiction is, "conventionally and properly, the first question a court is called on to consider," *Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994), the Court will first examine these arguments.

#### 1.  Eleventh Amendment

State Defendants argue first that Westchester County Family Court is entirely immune from suit and Magistrate Thompson is immune from suit in her official capacity pursuant to the Eleventh Amendment.  (*See* State Defs.' Mem. 6.)  In opposition, Plaintiff cites two Supreme

Court cases for the proposition that a state acting as a private entity should be regarded as an individual separate from government, and also contends that sovereign immunity "can only protect when public officers are doing their duty and upholding the Constitution." (Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s State Opp'n") ¶¶ 2–4 (Dkt. No. 33).)

"[A]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also* U.S. Const. amend. XI.[3] "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted). Thus, under the doctrine of sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal court, absent that state's consent or an express statutory waiver of immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("[T]here are two recognized exceptions to the [Eleventh Amendment] bar: when Congress authorizes a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued.").

"Although the [Eleventh] Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens." *Woods*, 466 F.3d at 236; *see also Hans v. Louisiana*, 134 U.S. 1, 16 (1890) (holding that sovereign immunity extends beyond

---

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

the text of the Eleventh Amendment such that a state cannot be sued by one of its own citizens without consent); *McGinty*, 251 F.3d at 91 ("[S]overeign immunity extends beyond the literal text of the Eleventh Amendment to bar a citizen from suing his own state under federal question jurisdiction . . . ."). Furthermore, the Eleventh Amendment "bars suits that seek either money damages or injunctive relief." *McGinty*, 251 F.3d at 91 (citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . , a State cannot be sued directly in its own name regardless of the relief sought."); *Cory v. White*, 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction . . . ."); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The party seeking immunity bears the burden of demonstrating that it is an arm of the state. *See Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir 2009) ("The burden is on the party seeking immunity to demonstrate that it is an arm of the state."); *see also Woods*, 466 F.3d at 237 (holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity") (internal quotation marks and citation omitted).

Courts have routinely held that New York has not waived, and Congress has not abrogated, sovereign immunity with respect to claims for constitutional violations under § 1983. *See, e.g.*, *Harrison*, 95 F. Supp. 3d at 314 ("It is well established that New York State has not waived its sovereign immunity from [§] 1983 claims. Moreover, Congress did not abrogate that immunity when it enacted [§] 1983." (citations and internal quotation marks omitted)); *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014) ("It is well settled that Congress did

not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity."); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to [§] 1983 actions nor has its sovereign immunity been abrogated.").

With respect to Westchester County Family Court, the Second Circuit has squarely held that "the New York State Unified Court System is unquestionably an arm of the State," and therefore "a lawsuit against the Unified Court System is in essence one for the recovery of money from the state, so that the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (alteration and internal quotation marks omitted). For that reason, "any claims against the Family Court, a court that is part of the New York State Unified Court System, must be dismissed because it is entitled to sovereign immunity as guaranteed by the Eleventh Amendment." *Dyer v. Family Court*, No. 16-CV-6876, 2016 WL 7494864, at *2 (E.D.N.Y. Dec. 28, 2016); *see also Jainity v. Sarway*, No. 13-CV-89, 2013 WL 816216, at *2 (E.D.N.Y. Mar. 5, 2013) (granting the Family Court of Kings County immunity because it "is an arm of the State of New York and hence immune from suit for damages in federal court under the 11th Amendment"); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) ("The County of Kings Family Court is a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity from suit in federal court.").

Plaintiff argues that "[c]hild [s]upport is not a part of the family court system," and cites 45 C.F.R. § 304.21, a federal regulation relating to federal reimbursement of certain costs arising from the execution of federal–state cooperation agreements. (Pl.'s State Opp'n ¶ 9.) Plaintiff reasons that because a judge presiding over a child support proceeding may be indirectly entitled

to reimbursement via § 304.21, the proceeding must not be "judicial" in nature.  (*See id.* ¶ 11.)

This specious argument is wrong on two levels.  First, the question is not whether Westchester

County Family Court complies with the demands of due process as Plaintiff sees them, but rather

whether Westchester County Family Court is a creature of New York State by virtue of its place

in the New York State Unified Court System.  The answer to this question, as the above cases

demonstrate, is plainly yes.  Second, Plaintiff has, in any event, misread the regulation.  Section

304.21(b) provides that federal financial participation (reimbursement) "is *not* available in: . . .

(2) Costs of compensation (salary and fringe benefits) of judges."  45 C.F.R. § 304.21(b)

(emphasis added).  To the extent any impropriety could be inferred from federal reimbursement

of state judicial salaries, the regulation has preempted such an attack.  In any event, nothing

about this regulatory scheme punctures the Eleventh Amendment's application here.

Regarding Plaintiff's claims against Magistrate Thompson in her official capacity, the

Second Circuit has held that "[t]o the extent that a state official is sued for damages in [her]

official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to

invoke the Eleventh Amendment immunity belonging to the state."  *Gan v. City of New York*,

996 F.2d 522, 529 (2d Cir. 1993).  Accordingly, suits against state officials in their official

capacity seeking damages are routinely dismissed on immunity grounds.  *See, e.g.*, *Nguyen v.

Milliken*, 104 F. Supp. 3d 224, 229 (E.D.N.Y. 2015) ("To the extent [the plaintiff] brings claims

for damages against [the defendants] in their official capacities as representatives of [state

colleges], such claims are barred by the Eleventh Amendment."); *Harrison*, 95 F. Supp. 3d at

316 ("Sovereign immunity also bars [the] [p]laintiff's *Bivens* claims to the extent they have been

brought against [the defendant] in his official capacity."); *Zherka v. Ryan*, 52 F. Supp. 3d 571,

578 (S.D.N.Y. 2014) ("[The] [d]efendants are correct in arguing that they are immune from suit in their official capacities.").

Plaintiff does request, in his Complaint, some unspecified "injunctive relief," (Compl. at 22), which could conceivably invoke the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). That doctrine permits a plaintiff to "sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted). But as State Defendants point out, (*see* State Defs.' Mem. 9), "conclusory requests for 'injunctive relief'" are not sufficient to trigger the *Young* doctrine, *Falcon v. City Univ. of N.Y.*, No. 15-CV-3421, 2016 WL 3920223, at *8 (E.D.N.Y. July 15, 2016); *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010) (dismissing claims against state officials where the "complaint itself [was] far less clear in its request for equitable relief," and "[o]n the face of the complaint, the *Young* exception [was] not supportable"); *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-CV-275, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (holding that the *Young* doctrine did not apply where the plaintiff "alleged no ongoing violation" and offered only "conclusory language requesting unspecified injunctive relief"). Plaintiff makes no effort to rebut this contention in his opposition, (*see* Pl.'s State Opp'n), and the Court otherwise agrees with State Defendants that the *Young* doctrine is not implicated here. Accordingly, absent an exception, Plaintiff's claims against Magistrate Thompson in her official capacity are barred by sovereign immunity.

Plaintiff does not resist the basic framework of sovereign immunity, instead offering two arguments for its inapplicability here. First, he contends that "[w]hen money is exchanged[,] [g]overnments descend to private person or corporation," thereby, in his view, divesting them of

the protections of sovereign immunity. (Pl.'s State Opp'n ¶ 2.) But the cases cited by Plaintiff in support are inapposite. In *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), the immunity of a state or its entities was not in dispute. Instead, the issue was whether the "rights and duties of the United States on commercial paper which it issues" were governed by federal law or local law. *Id.* at 366. Nowhere did the Supreme Court discuss the availability of sovereign immunity. In *Bank of United States v. Planters' Bank of Georgia*, 22 U.S. 904 (1824), the Court did discuss the Eleventh Amendment, but only insofar as it held that the fact that a state holds shares in a corporation does not entitle the corporation itself to sovereign immunity. *See id.* at 907. Neither of these cases even remotely addresses the application of sovereign immunity in situations where, as here, the state entities are undoubtedly acting in their capacity as arms of the state.

Plaintiff argues also that "[s]overeign [i]mmunity can only protect when public officers are doing their duty and upholding the Constitution." (Pl.'s State Opp'n ¶ 4.) This assertion is entirely without any legal support and, if true, would eviscerate centuries-old precedent holding that states are immune from suit regardless of the basis for the suit. There are only two exceptions to sovereign immunity, and neither of them involves situations where the plaintiff alleges the state entities violated the Constitution. *See McGinty*, 251 F.3d at 91. There is no authority supporting the proposition that sovereign immunity extends only to violations of state law or federal statutes—while Plaintiff is correct that the Constitution is the supreme law of the land, that does not lead to the inexorable conclusion that his claims here may be vindicated in federal court. After all, Eleventh Amendment Immunity itself is a constitutional command.

Accordingly, Westchester County Family Court is completely immune from suit here, and Magistrate Thompson is immune insofar as the Complaint alleges claims against her in her official capacity.

### 2. *Rooker-Feldman* Doctrine

All Defendants argue that all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (*See* State Defs.' Mem. 9–10; County Def.'s Mem. 10–11.) Plaintiff contends only that *Rooker-Feldman* is not implicated because the state judgments were procured through fraud. (*See* Pl.'s State Opp'n ¶ 22.)

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and applies only to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined the *Rooker-Feldman* doctrine and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d

Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third requirements as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

Plaintiff does not dispute any of the elements of the *Rooker-Feldman* doctrine, and a review of the Complaint and state court records make clear that this case satisfies each element. First, Plaintiff was, by his own admission, the loser in state court, as Magistrate Thompson entered a money judgment against him. (*See* Berg Decl. Ex. C.) The fourth element is also met, as the judgment was entered on April 19, 2016, (*see id.*), and this Action commenced on December 8, 2016, (*see* Dkt. No. 1).

While the satisfaction of the second and third elements is, perhaps, less intuitive, even a cursory review of the Complaint and existing case law confirms that Plaintiff's Action satisfies each of these elements: "Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears." *Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at *7 (E.D.N.Y. June 8, 2015) (alterations and internal quotation marks omitted); *see also Remy v. NYS Dep't of Taxation & Fin.*, No. 09-CV-4444, 2010 WL 3926919, at *3 (E.D.N.Y. Sept. 29, 2010) (holding that where a plaintiff sought compensatory damages under § 1983 for purported constitutional violations in connection with a child support proceeding, "the *Rooker-Feldman* doctrine bar[red] consideration of [the] [p]laintiff's claims"), *aff'd*, 507 F. App'x 16 (2d Cir. 2013); *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355–56 (E.D.N.Y. Jan. 24, 2004) (holding that the plaintiff's "allegations that [the hearing examiner] denied her due process and equal protection" in setting a child support amount were "inextricably intertwined with the state court's determinations" and were therefore barred by

*Rooker-Feldman*).  Here, Plaintiff makes clear throughout this Complaint that his alleged

damages arise from the constitutional violations he claims were inflicted on him by way of the

Westchester County Family Court proceedings and the resulting judgment against him.  (*See*

Compl. ¶¶ 1, 10–11, 105–07, 109–22.)  Plaintiff is seeking damages arising directly out of the

state court proceedings and judgment rendered against him, and his claims therefore fall within

*Rooker-Feldman*.

The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of

no help to him, as many of the cases cited above (and others) have arisen in identical contexts.

*See, e.g.*, *Remy*, 2010 WL 3926919, at *3 (dismissing claims that "the state court decision[]

upholding the [child support] judgment violated [the plaintiff's] constitutional rights" and that

the "state court judgment was issued without jurisdiction," holding that allowing such claims to

go forward "would obliterate the *Rooker-Feldman* doctrine"); *Cogswell*, 304 F. Supp. 2d at 355–

56 (applying *Rooker-Feldman* where "[t]he plaintiff's principal complaint [was] that she was

denied due process because she was not given a hearing to determine the amount of child support

that was owed and that she was not given notice that her vehicle would be seized due to her

failure to pay child support").  Nor does it aid Plaintiff that he claims he has paid his child

support obligations, (*see* Pl's State Opp'n ¶¶ 15–21), as this precise claim has been dismissed on

*Rooker-Feldman* grounds, *see Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *4

(E.D.N.Y. Nov. 7, 2014) (applying *Rooker-Feldman* where the plaintiff asked the court to review

a family court decision "setting arrears on the grounds that the decision was erroneous because

he had complied with all previous child support obligations and thus could not be liable for

arrears"), *aff'd*, 645 F. App'x 103 (2d Cir. 2016).

Finally, with respect to Plaintiff's claim that *Rooker-Feldman* does not apply where the state court judgment was allegedly procured by fraud, (*see* Pl.'s State Opp'n ¶ 22), Defendants are correct that no such defense is available. In support, Plaintiff cites only out-of-circuit authority from the 1960s, (*see id.*), thus overlooking the fact that the Second Circuit has "never recognized a blanket fraud exception to *Rooker-Feldman*," *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (internal quotation marks omitted). Federal district courts in the Second Circuit have consistently enforced this rule. *See, e.g.*, *Brady v. Goldman*, No. 16-CV-2287, 2017 WL 111749, at *3 (S.D.N.Y. Jan. 11, 2017) ("[The] [p]laintiff's attempts to bypass the *Rooker-Feldman* doctrine . . . ignore clear and controlling law in th[e] [Second] Circuit, which does not recognize a fraud exception to the *Rooker-Feldman* doctrine . . . ."); *Gurdon v. Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) ("[T]here is not a fraud exception to the *Rooker-Feldman* doctrine."), *adopted by* 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 369 (S.D.N.Y. 2015) ("Courts in th[e] [Southern] District consistently have held that there is no fraudulent procurement exception to the *Rooker-Feldman* doctrine."). Plaintiff has not pointed to a single case in the Second Circuit where the court exercised jurisdiction in these circumstances, and while Plaintiff may believe the law should be otherwise, this Court is bound by the Second Circuit's decisions. Accordingly, *Rooker-Feldman* bars all of Plaintiff's claims, and this Court lacks jurisdiction.

### 3. Domestic Relations Exception

Finally, Defendants argue that even if the above analysis is incorrect, the domestic relation exception provides another jurisdictional bar. (*See* State Defs.' Mem. 11–12; County Def.'s Mem. 11–12.) Plaintiff did not respond to this argument. (*See* Pl.'s State Opp'n; Pl.'s Opp'n to Def.'s Mot. To Dismiss (Dkt. No. 58).)

"[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody degrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Since the Supreme Court announced this rule, "[t]he exception has consistently been applied to child support judgments as well." *Csikota v. Tolkachev*, No. 08-CV-5283, 2010 WL 370284, at *3 (E.D.N.Y. Jan. 29, 2010); *see also Southerland v. Banks*, No. 15-CV-6088, 2015 WL 9581818, at *2 (E.D.N.Y. Dec. 30, 2015) ("Without determining the merits of [the] plaintiff's claims, the court cannot review his child support obligations as this is a matter of state domestic relations law."); *Joseph v. Stewart*, No. 13-CV-1678, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) ("[The] [p]laintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). And, as with the other jurisdictional bars, the fact that Plaintiff is challenging the constitutionality of his child support obligations is of no help, as the domestic relations exception applies regardless of the theory of liability. *See, e.g.*, *Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 812491, at *4 (E.D.N.Y. Jan. 28, 2013) ("[The plaintiff] invokes constitutional and other rights, but the substance of his claims about the impact on him of child support orders concerns state law domestic relations matters, matters that are better adjudicated in state court . . . ."), *adopted by* 2013 WL 816284 (E.D.N.Y. Mar. 1, 2013); *Sullivan v. Xu*, No. 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) ("Although [the] plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters. Therefore, this action is dismissed . . . .").

In the absence of any authority cited by Plaintiff in opposition, and in light of the case law above, the Court holds that the domestic relations exception precludes any adjudication of

the claims presented by Plaintiff here, as they all involve monetary damages arising out of the judgment entered against him for delinquent child support payments.

### C.  Additional Claims

Although not pressed by Plaintiff in his opposition papers, the Court notes that the Complaint alleges that Plaintiff was falsely arrested on April 19, 2016, assaulted for exercising his First Amendment rights, and charged with false criminal charges.  (*See* Compl. ¶¶ 91–97.) Plaintiff has not, however, named as a defendant the officer who allegedly assaulted and arrested him, or the officer responsible for filing the allegedly false charges.  Plaintiff's claims plainly cannot proceed without such defendants being named, as there are no allegations that Defendants played any role in that conduct.  Accordingly, the dismissal of the claims asserted herein is without prejudice to Plaintiff's ability to file a new complaint, if he wants to present these claims.

### D. State Law Claims

Having dismissed all of Plaintiffs federal claims, the Court will not exercise supplemental jurisdiction over any of Defendant's claims that may be construed as state law claims.  (*See id.* ¶¶ 132–164.)  Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists."  *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)).  The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers*

*of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotation marks omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.'" *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Because the Court has dismissed all federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims.

## III. Conclusion

For the foregoing reasons, Defendants' Motions are granted. The Court lacks jurisdiction to adjudicate any of Plaintiff's claims. This dismissal is without prejudice because Plaintiff has not yet amended his Complaint. This dismissal is also without prejudice as to Plaintiff's ability to file a complaint for false arrest, excessive force, and malicious prosecution against the officer or officers responsible for that alleged conduct.

The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 24, 53).

SO ORDERED.

DATED:     September 6, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22